UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CONNOISSEURS PRODUCTS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> FRESH FINEST, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 23-CV-11649-AK <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**ANGEL KELLEY, D.J.**

Plaintiff Connoisseurs Products Corporation ("Connoisseurs" or "Plaintiff"), a Massachusetts-based company, brings this action against Defendant Fresh Finest, LLC ("Fresh Finest" or "Defendant"), a New York-based company. Connoisseurs alleges that Fresh Finest was selling a "knock off" of its product, the "Diamond Dazzle Stik," online. Connoisseurs asserts claims for (1) trademark infringement; (2) violation of the Massachusetts Consumer Protection Act ("MCPA"); (3) trade dress infringement; (4) unfair competition and false designation of origin; (5) trade dress dilution; (6) common law trademark infringement; (7) common law unfair competition; (8) unjust enrichment; and (9) false advertising. Pending before the Court is Defendant's Motion to Dismiss [Dkt. 34] Plaintiff's First Amended Complaint [Dkt. 33] for lack of personal jurisdiction. For the following reasons, Defendant's Motion to Dismiss is **GRANTED**. The Court **TRANSFERS** the case to the Southern District of New York.

1

**I.     BACKGROUND**

The facts of this case are based on the allegations in the First Amended Complaint (the "Amended Complaint") [Dkt. 33], which the Court must take as true for the purpose of resolving Defendant's Motion to Dismiss.  Connoisseurs is a Massachusetts-based corporation that manufactures jewelry and silver care products.  [Dkt. 33 ¶¶ 1, 8].  It has used the trademark "DIAMOND DAZZLE STIK" in connection with its sale of products in the United States for over a decade.  [Id. ¶ 9].  Among the products it sells are cleaning supplies for jewelry.  [Id. ¶ 10].  The Diamond Dazzle Stik is one such product that cleans diamonds.  [Id.].  Fresh Finest is a limited liability company with its principal place of business in Spring Valley, New York.  [Id. ¶ 2].  Connoisseurs alleges Fresh Finest created, advertised, imported, sold, and distributed a product called Diamond Glitz Stik, an alleged "knock off" of Plaintiff's Diamond Dazzle Stick, in violation of Connoisseurs' rights.  [Id. ¶ 31].  Connoisseurs subsequently filed the instant case, and Defendant now moves for dismissal for lack of personal jurisdiction.  [Dkt. 34].

**II.    LEGAL STANDARD**

When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists."  Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)).  When the Court assesses its jurisdiction without an evidentiary hearing, the prima facie standard applies.  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).  Under the standard, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  The Court reviews the pleadings, supplemental filings in the record, and undisputed facts, giving credence to the plaintiff's version

of genuinely contested facts. Id. While the plaintiff's burden of proof is "light," it nevertheless requires them not to rely on "mere allegations" alone but to point to specific facts in the record that support their claims. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard, 290 F.3d at 51). The Court "'must accept the plaintiff's (properly documented) evidentiary proffers as true' . . . irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995)). The Court is to view these facts in the light most favorable to the plaintiff's jurisdictional claim. Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The defendant may also offer evidence, but the evidentiary proffers of the defendant "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48 (citing Massachusetts Sch. of Law at Andover, Inc., 142 F.3d at 34); see Baskin-Robbins, 825 F.3d at 34 ("We may, of course, take into account undisputed facts put forth by the defendant.").

### III.  DISCUSSION

#### A.  Personal Jurisdiction

When determining whether a nonresident defendant is subject to its jurisdiction, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). As such, in a diversity case like this one, Connoisseurs has the burden of demonstrating "both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)). For reasons explained below, the Court is constrained to conclude that Connoisseurs has

not made a prima facie showing that the exercise of specific jurisdiction over Fresh Finest would comport with federal due process standards.

### 1. Due Process

The Court's inquiry starts – and stops – with the Due Process Clause of the Constitution. The Due Process Clause requires that the out-of-state defendant over whom this Court is exercising jurisdiction over have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A federal court may exercise general or specific jurisdiction over a defendant. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). A court can exercise general jurisdiction over a defendant when the defendant has engaged in "continuous and systematic activity" in the forum state, even if the activity in question is unrelated to the suit. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Here, Plaintiff concedes that the Court does not have general jurisdiction over the Defendant. Thus, the Court need only examine whether the Court has specific jurisdiction.

In order for a court to exercise specific jurisdiction over a defendant, (1) the claim must "relate[] to or arise[] out of the defendant's contacts with the forum"; (2) the contacts must "constitute purposeful availment of the benefits and protections afforded by the forum's laws"; and (3) the exercise of jurisdiction must be reasonable. Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Satisfying all three prongs is necessary to establish specific personal jurisdiction. See Motus, LLC v. Cardata Consultants, Inc., 23 F.4th 115, 122 (1st Cir. 2022). Courts give significant weight to the "purposeful availment" prong when the "contacts in question are related to a website that is available in the forum but that is

4

operated outside of it[.]"  See Frawley v. Nexstar Media Grp., Inc., No. 2023 WL 6065768, at *5 (D. Mass. Sept. 18, 2023).

    a. **Relatedness**

To satisfy relatedness, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities." Foster-Miller, 46 F.3d at 144 (internal citation omitted). This "relaxed" prong only requires Plaintiff to show that the claim has a "demonstrable nexus" to contacts in the forum state. Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019) (internal citation and quotations omitted). Here, Plaintiff's claim clearly arises out of Defendant's contact with Massachusetts (even if contested). This is especially the case where the "publication of a website in Massachusetts constituted in itself the alleged tortious conduct." Alves v. Goodyear Tire & Rubber Co., 683 F. Supp. 3d 111, 117 n.2 (D. Mass. 2023), appeal dismissed, No. 23-1682, 2023 WL 9782813 (1st Cir. Dec. 18, 2023) (internal quotations and citation omitted); see also Gather, Inc. v. Gatheroo, LLC, 443 F. Supp. 2d 108, 115 (D. Mass. 2006) (concluding that the relatedness prong is easily met when trademark infringement claim arose from a website that allegedly caused harm to plaintiff in forum state). Thus, Plaintiff has sufficiently satisfied the initial inquiry of the tripartite analysis by demonstrating that its claims relate to Defendant's conduct in Massachusetts.

    b. **Purposeful Availment**

That the action is related to the contacts in the forum state, however, is not enough to subject a defendant to this Court's jurisdiction. Plaintiff carries the burden of demonstrating that all three elements required for specific jurisdiction are satisfied. "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." Scottsdale Capital

Advisors Corp. v. Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018).  The next two prongs are where Plaintiff falls short.  Purposeful availment is the linchpin of the fall.

Due process requires that a defendant's in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." Daynard, 290 F.3d at 61(internal citation omitted).  This is to ensure "that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle, 70 F.3d at 1391 (internal citation omitted).  This requires a showing of both voluntariness and foreseeability. Id.  The nonresident defendant's contacts with residents in the forum state "must be voluntary and not based on the unilateral actions of another party," and it "must be such that [the nonresident defendant] could reasonably anticipate being haled into court there." Adelson, 510 F.3d at 50 (internal citation and quotations omitted).  Historically, in determining whether purposeful availment exists in cases involving website activity, courts have focused on the level of "interactivity" of a nationally accessible website by residents in the forum state.  Motus, LLC v. CarData Consultants Inc., 520 F. Supp. 3d 87, 92 (D. Mass. 2021), aff'd, 23 F.4th 115 (1st Cir. 2022) (quoting Zippo Manufact. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  However, the focus has shifted since, now,  "virtually every business now has a website." Id. (internal citation omitted); see also Guidecraft, Inc. v. OJCommerce, LLC, No. 2:18-CV-01247, 2019 WL 2373440, at *5 (W.D. Pa. May 20, 2019), report and recommendation adopted, No. 2:18-CV-01247-LPL, 2019 WL 2371645 (W.D. Pa. June 5, 2019) ("While the commercially interactive nature of Defendants' website and its use of the Amazon site place Defendants' actions towards the more interactive end of the *Zippo* spectrum, Plaintiff has not met

its burden of showing that Defendants made purposeful contact with the Western District of Pennsylvania.").

Now, courts in this Circuit require "something more" to show a defendant purposefully availed itself of doing business in the forum state through a nationally accessible website. Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107, 112 (D. Mass. 2014). As stated by the Media3 court, "without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would eviscerate the limits on personal jurisdiction over out-of-state defendants." Media3 Techs., 17 F. Supp. 3d at 112. In addressing what constitutes "something more," courts have "focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010).

In Cossaboon, the First Circuit found it instructive that the defendant's website was available to anyone in the United States with Internet access, the defendant did not target Massachusetts residents specifically, and any advertising on it was no more likely to solicit business in the forum state than anywhere else. Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 190 (D. Mass. 2012) (summarizing Cossaboon, 600 F.3d at 35). In Motus, the First Circuit reaffirmed these factors and added that a finding of purposeful availment required more than just "defendant's mere awareness that its products were entering a given market in the stream of commerce." 23 F.4th at 124-25 (quoting Kuan Chen v. U.S. Sports Academy Inc., 956 F.3d 45, 59-60 (1st Cir. 2020)). Thus, courts should look to "evidence of specific targeting of forum residents" and "evidence that the website has generated substantial revenue from forum residents." Id. at 25 (internal quotations and citation omitted). Examples of

7

"something more" include purposefully directing business to residents in forum state (see Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09CV11884-NG, 2010 WL 3895177, at *6 (D. Mass. Oct. 1, 2010)); using a website to conduct a substantial amount of its sales in the forum state (see Power v. Connectweb Techs., Inc., 648 F. Supp. 3d 302, 318 (D. Mass. 2023)); advertising in the forum state (see Goya Foods Inc. v. Oy, 959 F. Supp. 2d 206, 214 (D.P.R. 2013)); and working with a distributor who specifically agreed to serve the forum state (see id.).

Here, the Amazon and Walmart pages selling Defendant's alleged "knock off" product is also available to anyone with Internet access. It does not target Massachusetts residents directly, and it contains generic advertising that is no more likely to solicit customers in Massachusetts than anywhere else. See Motus, 520 F. Supp. 3d at 92-93. Moreover, Defendant does not offer its products in brick-and-mortar stores in Massachusetts, owns no property in Massachusetts, has no employees in Massachusetts, and, overall, has no connection to Massachusetts. See Media3 Techs., 17 F. Supp. 3d at 112. Lastly, there are no allegations that Defendant derives significant revenue from customers in Massachusetts. See Power, 648 F. Supp. 3d at 318. In fact, the only allegation that supports *any* revenue is from Plaintiff's own actions.

In its opposition to the Motion to Dismiss, Plaintiff argues the "something more" is satisfied in cases involving an intentional tort, such as trademark infringement. [Dkt. 26 at 10]. To buttress its argument, Plaintiff argues that its trademark was registered with the Patent and Trademark Office since 2010, giving Defendant constructive notice of Plaintiff's home state of Massachusetts. Moreover, Plaintiff contends that Defendant had actual notice of the trademark registration and of its home state when a cease-and-desist letter was sent to Defendant in February 2023. Both of these arguments miss the mark.

First, Plaintiff's argument that "something more" is satisfied because this is a trademark infringement case must fail because such a per se rule, even if limited to trademark infringement cases, "could improperly erode important limits on personal jurisdiction over out-of-state defendants."[1] A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016). The First Circuit has held that, in order for an intentional tort, such as trademark infringement, to constitute purposeful availment and, thus, give rise to personal jurisdiction, "the defendant would have to have known of both the existence of a potential victim and the victim's likely whereabouts." Motus, 23 F.4th at 126. Nothing in Plaintiff's Amended Complaint suggests that Defendant knew of Plaintiff or where it was even located. As the court in Sun Life stated, "[t]he location of the trademark holder's headquarters is irrelevant with respect to the customers who are confused or deceived by the infringement, and therefore arguably is not the real situs of the tort." 946 F. Supp. 2d at 191.

Plaintiff also contends that Defendant knew of Plaintiff's existence because it sent a cease-and-desist letter. However, the Amended Complaint is void of any mention of such letter and Plaintiff cannot plead allegations for the first time in its opposition. To consider this newly asserted allegation "would deprive the defendants of clear notice of the allegations against them." Steele v. Turner Broad. Sys., Inc., 607 F. Supp. 2d 258, 263 (D. Mass. 2009). Even if

---

[1] Plaintiff frequently relies on Edvisors Network, Inc. v. Educational Advisors, Inc., to buttress its argument that "something more" is satisfied because the case centers on an alleged trademark infringement claim. 755 F. Supp. 2d 272, 283 (D. Mass. 2010). However, as it has been extensively discussed since, the Edvisors court relied on Venture Tape Corp. v. McGills Glass Warehouse, 292 F.Supp.2d 230 (D. Mass. 2003), a case that is over two decades old. The judge in Edvisors, sitting by designation in the District of Massachusetts, concluded that "[defendant's] alleged misuse of trademarks belonging to a Massachusetts company is enough to constitute minimum contacts for the purposes of establishing personal jurisdiction." Edvisors Network, 755 F. Supp. 2d at 284. However, "[a]s the use of interactive websites by businesses has expanded in the years following [the Venture Tape] decision, [] other Sessions of this Court have disagreed with his conclusion." Motus, 520 F. Supp. 3d at 93. This Court joins other courts in this disagreement.

this Court considered this newly pleaded allegation, "purposeful availment was not created simply by [defendant's] receipt of a cease and desist letter. To find otherwise would authorize personal jurisdiction in this forum over any defendant who receives a [] corporation's 'cease and desist' letter and does not immediately discontinue his use of the allegedly infringing mark." PC Connection, Inc. v. Crabtree, 754 F. Supp. 2d 317, 332 (D.N.H. 2010) (internal citation and quotations omitted). The Court is also concerned with Plaintiff's unilateral activities. In addition to sending the cease-and-desist letter, Plaintiff also directed its agent to purchase a product from Defendant's page. The First Circuit has repeatedly held that a plaintiff's "unilateral activity cannot establish the requisite connection between the defendants and the forum jurisdiction." Kuan Chen, 956 F.3d at 59 (internal citation and quotations omitted). Accordingly, Plaintiff has not made a sufficient showing of purposeful availment. Thus, the exercise of personal jurisdiction over Fresh Finest would be inconsistent with the requirements of constitutional due process.

### c. Reasonableness

Assuming, *arguendo*, that Defendant's conduct satisfied the purposeful availment prong of the Due Process Clause analysis, subjecting them to this Court's jurisdiction would not comport with traditional notions of fair pay and substantial justice. In other words, it would not be reasonable. To determine whether specific personal jurisdiction would be reasonable, courts in this Circuit consider the five "gestalt" factors:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

10

Foster-Miller, 46 F.3d at 150.  These factors play an important role if the first two prongs are weak.  See Adelson, 510 F.3d at 51.  To be clear, the Court does not believe it necessary to examine reasonableness since purposeful availment is not particularly a close call.  However, because the Internet has become an omnipresent tool in our daily lives, readily accessible from almost anywhere – at anytime –  the Court welcomes the opportunity to discuss the fifth, and what this Court believes to be, a significant gestalt factor.

To exercise personal jurisdiction over Defendant here would be tantamount to haling into court any defendant that sells products online.  The Internet, by design, can reach people in every jurisdiction.  Thus, the owner of such a website would be subject to personal jurisdiction in every state.  This is the case even if the Court were to consider the cease-and-desist letter.  PC Connection, 754 F. Supp. 2d at 335 ("[P]urposeful availment was not created simply by [Defendant's] receipt of a 'cease and desist' letter.").  There is no allegation that Defendant sold any product to a Massachusetts resident (other than Plaintiff's agent), no allegation that Defendant circulated advertisements in Massachusetts, and no allegation that Defendant specifically targeted Massachusetts any more than any other state.  A contrary ruling to today's has the potential to open the floodgates and allow jurisdiction to be exercised over passive online sellers across the country.  This is the opposite of a limiting principle and exactly the sort of action that would offend traditional notions of fair play and justice.

### 2. Long-Arm Statute

Massachusetts' long-arm statute provides that a court may exercise personal jurisdiction over a person as to a cause of action in law or equity arising from, inter alia, the person's "(a) transacting any business in this commonwealth" or "(c) causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. Laws Ann. ch. 223A, § 3.  The court must

"construe[ ] the 'transacting any business' language of the statute in a generous manner," and focus on "whether the defendant attempted to participate in the commonwealth's economic life." United Elec., Radio & Mach. Workers, 960 F.2d at 1087. To satisfy Mass. Gen. Laws ch. 223A, § 3(c), the plaintiff must show that the defendant (1) did some act in Massachusetts, that (2) caused the plaintiff harm in Massachusetts. Alianza Americas v. DeSantis, 727 F. Supp. 3d 9, 37 (D. Mass. 2024). Under both Section 3(a) and Section 3(c), the "[p]laintiff bears the burden of showing that the cause of action 'aris[es] from' activities in Massachusetts." Alianza Americas, 727 F. Supp. 3d at 38 (internal citation omitted).

The First Circuit has treated the limits of Massachusetts' long-arm statute as coextensive with those of the Due Process Clause. Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). The First Circuit suggested that the Massachusetts long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution. Motus, 23 F.4th at 124. Having concluded that the Due Process Clause does not permit the exercise of personal jurisdiction over Defendant in this case, the Court "need not untangle this potential 'tension in our precedent here.'" A Corp., 812 F.3d at 59 (quoting Copia, 812 F.3d at 4); Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 95 (1st Cir. 2024) (explaining that although the reach of the Massachusetts long-arm statute may not be identical to that of the Due Process Clause, the court need not inquire into such distinctions when the plaintiff has not satisfied the constitutional minimum demanded by due process).

Because the Court finds that Plaintiff has not satisfied its constitutional burden, the Court does not need to address the statutory requirements. Motus, 23 F.4th at 124 (stating that it would "serve no useful purpose" to analyze statutory authorization under Massachusetts' long-arm statute when plaintiff has not satisfied the federal constitutional requirements for personal

jurisdiction); Ward v. AlphaCore Pharma, LLC, 89 F.4th 203, 211 (1st Cir. 2023) (refusing to conduct further statutory analysis when the court has found defendant's activities to be insufficiently related to Massachusetts to satisfy the strictures of due process); Chouinard v. Marigot Beach Club & Dive Resort, No. CV 20-10863-MPK, 2023 WL 2743305, at *7 (D. Mass. Mar. 31, 2023), appeal dismissed, No. 23-1390, 2023 WL 7321758 (1st Cir. June 29, 2023) (declining to address the statutory requirements under Massachusetts' long-arm statute because the court found that plaintiffs have not satisfied their constitutional burden).

### B. Consent to Jurisdiction

As a last attempt, Plaintiff contends that Defendant consented to jurisdiction by consenting to the imposition of a temporary restraining order ("TRO") and preliminary injunction. [Dkt. 36 at 19]. However, this can also be easily dispatched. Defendant did not "consent" to the TRO and preliminary injunction, as Plaintiff suggests. Defendant's response to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction is the following:

> Because Defendant has no plans to continue selling products under the allegedly infringing mark, and in the interest of judicial economy, it does not oppose Plaintiff's motion for a temporary restraining order and preliminary injunction at this time. Defendant's decision not to oppose should not be construed as an admission of liability or a concession that the motion is meritorious.

[Dkt. 25 at 1].

The Supreme Court acknowledged that "because the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) (internal citation and quotations omitted). It is true that actively participating in litigation to argue the merits of a case can constitute a waiver. See Lechoslaw v.

13

Bank of Am., N.A., 618 F.3d 49, 55 (1st Cir. 2010) ("[A] party may nevertheless waive jurisdiction if it makes voluntary appearances and contests the case at all stages until judgment is rendered."); see also Rates Technology Inc. v. Nortel Networks Corp., 399 F.3d 1302, 1309 (Fed. Cir. 2005).  Courts across the country have found that this usually requires an "affirmative act" from the defendant.  See S.E.C. v. Ross, 504 F.3d 1130, 1149 (9th Cir. 2007) ("In general, we have held that a party has consented to personal jurisdiction when the party took some kind of affirmative act—accepting a forum selection clause, submitting a claim, filing an action—that fairly invited the court to resolve the dispute between the parties.").

Defendant's action of not opposing the TRO is a far cry from an "affirmative act."  A sister court found a defendant did not waive its personal jurisdiction defense even though it participated in the case in the following ways:  filing a notice of removal, opposing remand, answering the complaint, stipulating to the dismissal of defendants, opposing a motion to admit an attorney *pro hac vice,* filing a motion to strike, stipulating to a change of venue, and assenting to a motion to admit attorneys for defendant *pro hac vice.*  Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 97 (D. Mass. 2015).  Likewise, this Court concludes that Defendant's decision to not oppose the TRO does not constitute a waiver of a jurisdiction defense.  A contrary holding would waive the defense for any defendant "who bothered to respond to a motion for a preliminary injunction, agreed to a discovery schedule, or showed up at a hearing to address how to proceed[.]"  Moog Inc. v. Skyryse, Inc., 2022 WL 17720965, at *8 (W.D.N.Y. Dec. 15, 2022).

The Court also finds Plaintiff's reliance on out-of-circuit cases misplaced.  This Court is not duty bound to follow them, and those cases also involve instances where a defendant has consented to a stipulation to an injunction order or preliminary injunction.  Aeration Sols., Inc. v. Dickman, 85 F. App'x 772, 774 (Fed. Cir. 2004); see also Gus's Franchisor, LLC v. Terrapin

14

Rest. Partners, LLC, 2020 WL 6878358, at *4 (W.D. Tenn. Nov. 23, 2020) (finding defendant waived personal jurisdiction after consenting to permanent injunction and making a general appearance). Moreover, many of the cases involve substantial litigation participation from the defendant. See Thursday LLC v. Klhip Inc., 2018 WL 4216389, at *4 (M.D. Fla. Sept. 5, 2018) (finding defendants waived their jurisdiction defense after consenting to the preliminary injunction and participating in case management conference); see also Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund, 967 F.2d 688, 692 (1st Cir. 1992) (finding personal jurisdiction is waived after defendant jointly entered a stipulation and then subjected itself to a hearing on the preliminary injunction).

Defendant did not consent to the TRO – it did not oppose it. While subtle, this Court, like others, appreciates the distinction. See Titan Wheel Corp. of Illinois v. McDonald Steel Corp., 2019 WL 1532223, at *2 (C.D. Ill. Apr. 9, 2019) ("[A] party does not consent to jurisdiction by not opposing a motion to lift stay."). Moreover, Defendant's statement that it did not oppose the TRO falls short of a showing that it affirmatively consented to personal jurisdiction. See Notis Glob., Inc. v. Kaplan, 2018 WL 3729075, at *4 (E.D. Mich. Aug. 7, 2018). On the contrary, Defendant engaged in good faith efforts by not opposing the motion and preserving judicial and party resources. Accordingly, the Court finds that Defendant has not consented to this Court's jurisdiction.

### C.    Transfer

Although this Court lacks jurisdiction over the Defendant, it is not the end of the road for the case. When a district court lacks jurisdiction, federal law empowers it to transfer the case to another district under 28 U.S.C. § 1631. The First Circuit has held that Section 1631 has created "a presumption in favor of transfer which is rebutted only if the transfer is 'not in the interest of

15

justice.'" Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 225 (D. Mass. 2022) (quoting Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003) ("Congress's use of the phrase 'shall ... transfer' in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice."). Section 1631 originally was understood to favor transfers when a court determines it lacks subject matter jurisdiction, but this understanding has now expanded to include transfers based on a lack of personal jurisdiction. Fed. Home Loan Bank of Boston, 821 F.3d at 114-19. Plaintiff has requested a transfer as alternative relief. Defendant did not provide any arguments rebutting the presumption in favor of transfer.

Three factors courts consider when determining whether a transfer is appropriate include: "1) whether the action could have been brought in another federal court, 2) whether a limitations period has run that would preclude filing in the correct court and 3) whether the case is frivolous or brought in bad faith." Bean v. Johnson & Wales University, No. CV 19-11197-NMG, 2019 WL 5067965, at *5 (D. Mass. Oct. 8, 2019).

These factors, together, weigh in favor of transfer. Plaintiff could have brought this action in New York. The Court is not aware of (and Plaintiff did not present) any limitations periods that would prevent Plaintiff from refiling in New York.[2] Lastly, the Court does not believe the case is frivolous or brought in bad faith. Since this Court is satisfied that transfer is in the interest of justice, this case is hereby transferred to New York. Because Fresh Finest has its principal place of business in Spring Valley, New York, this matter is transferred to the Southern District of New York. See Lewis v. Hill, 683 F. Supp. 3d 137, 162-63 (D. Mass. 2023)

---

[2] The Court is aware that the Second Circuit has consistently held that a six-year limitations period applies for trademark infringement cases. See Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018).

16

(transferring case to the Middle District of Florida because the company is a Florida corporation with a Jacksonville principal business address).

## IV. CONCLUSION

At the end of the day, Plaintiff argues personal jurisdiction is based on two contacts with the forum state: (1) the sale of an alleged "knock off" product to the Plaintiff's agent and (2) an improperly pleaded cease-and-desist letter. Without more, these two contacts with the forum state are not enough to establish the necessary minimum contacts with Massachusetts. With such minimal showing, public policy strongly favors not exercising personal jurisdiction over Defendant. See Tuteur v. Crosley-Corcoran, 961 F. Supp. 2d 333, 338 (D. Mass. 2013) ("For policy reasons, most jurisdictions have held that cease-and-desist letters—like those sent by Crosley–Corcoran's attorneys—absent additional purposeful acts directed to the contested forum, are inadequate to establish jurisdiction."). For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 34] is **GRANTED** and the case is **TRANSFERRED** to the Southern District of New York.

SO ORDERED.

Dated: March 12, 2025                    /s/ Angel Kelley
                                          Hon. Angel Kelley
                                          United States District Judge